IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

**LISA LYNN HAGER,**

       **Plaintiff,**

v.                                     **CASE NO. 2:11-cv-00598**

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security,**

       **Defendant.**

## PROPOSED FINDINGS AND RECOMMENDATION

      This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's application for disability insurance benefits ("DIB") and supplemental security income ("SSI"), under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f. By standing order, this case was referred to this United States Magistrate Judge to consider the pleadings and evidence, and to submit proposed findings of fact and recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B). Both parties have submitted briefs in support of their positions.

      The plaintiff, Lisa Lynn Hager (hereinafter referred to as "Claimant"), filed applications for SSI on July 13, 2010 and DIB on May 13, 2009, alleging disability as of April 6, 2009, due to diabetes, paralysis of the lower extremity, disc degenerative disease, allergies and bilateral carpal tunnel syndrome. (Tr. at 16, 124-25, 139.) The claims were denied initially and upon reconsideration. (Tr. at 16, 62-66, 70-72.) On October 26, 2009, Claimant requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. at 73-74.) The hearing was held on November 29, 2010, before the

Honorable Andrew Chwalibog.  (Tr. at 37-59.)  By decision dated March 31, 2011, the ALJ determined that Claimant was not entitled to benefits.  (Tr. at 16-30.)  The ALJ's decision became the final decision of the Commissioner on July 6, 2011.  (Tr. at 1-4.)  On September 2, 2011, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability.  See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972).  A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims.  20 C.F.R. §§ 404.1520, 416.920 (2011).  If an individual is found "not disabled" at any step, further inquiry is unnecessary.  Id. §§ 404.1520(a), 416.920(a).  The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment.  Id. §§ 404.1520(b), 416.920(b).  If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment.  Id. §§ 404.1520(c), 416.920(c).  If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4.  Id. §§ 404.1520(d), 416.920(d).  If it does, the claimant is found disabled and awarded benefits.  Id.  If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work.  Id. §§ 404.1520(e), 416.920(e).  By

satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2011). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because she has not engaged in substantial gainful activity since the alleged onset date. (Tr. at 18.) Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments of degenerative disc disease and depression. (Tr. at 18.) At the third inquiry, the ALJ concluded that Claimant's impairments do not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 21.) The ALJ then found that Claimant has a residual functional capacity for sedentary work, reduced by nonexertional limitations. (Tr. at 23.) As a result, Claimant cannot perform her past relevant work. (Tr. at 28.) On this basis, benefits were denied. (Tr. at 29.)

Scope of Review

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as

3

> "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner in this case is not supported by substantial evidence.

Claimant's Background

Claimant was forty-one years old at the time of the administrative hearing. (Tr. at 41.) Claimant graduated from high school and took some college classes. (Tr. at 42.) In the past, she worked as a paralegal supervisor and small business owner. (Tr. at 42-43, 52.)

The Medical Record

The court has reviewed the medical evidence of record and will summarize it briefly below.

The record includes treatment notes from Melissa J. Gamponia, M.D. at Riverside Health Clinic dated April 2, 2008, through April 20, 2009. On April 20, 2009,

4

Claimant complained of right leg pain in her lower back since April 6, 2009. Claimant lifted a five gallon water container and her daughter and also went four wheeling in the span of several weeks before the pain began. (Tr. at 235.) Dr. Gamponia ordered x-rays. (Tr. at 236.)

On April 25, 2009, Claimant underwent an MRI of the lumbar spine without contrast. It showed central disc herniation at L4-5 with a right paracentral extrusion and impingement upon the intrathecal right L5 nerve root and central right paracentral disc herniation at L5-S1 with impingement upon the intrathecal portion of the right S1 nerve root. (Tr. at 244.) X-rays of the lumbar spine showed early degenerative changes at the L5-S1 disc space level. The lumbar spine was otherwise normal. There was no evidence of acute bony injury. (Tr. at 246.)

On April 29, 2009, Claimant reported to the emergency room with complaints of low back and leg pain and numbness. Claimant's pain began after her daughter jumped into her arms and she rode an ATV. (Tr. at 247.) The impression was acute lumbar radiculopathy. (Tr. at 248.) She was prescribed Percocet and Valium and referred back to Dr. Gamponia. (Tr. 248.)

Claimant underwent physical therapy in May of 2009, but was discharged after she did not progress. (Tr. at 249-57, 267.)

X-rays of the c-spine on June 17, 2009, showed no marked arthritic changes and no signs of fracture. (Tr. at 388.)

By letter dated May 15, 2009, Dr. Gamponia wrote a lengthy letter outlining Claimant's medical condition in an attempt to obtain a medical card for Claimant. She noted the results of Claimant's MRI, but that Claimant did not have any associated bowel

or bladder problems. Despite pain medications, including Naprosyn and Zanaflex, Claimant was unable to bear weight on her right leg or sit in a comfortable position for any period of time. Dr. Gamponia noted that Claimant took a brief course of physical therapy, which was terminated due to her worsening pain. Claimant had difficulty working as a paralegal or in her business because of her pain. Pain medications caused sedation. She could not afford to see a neurosurgeon. Dr. Gamponia noted that Claimant would benefit from receipt of a medical card so that she can return to work as soon as possible. Dr. Gamponia finally noted that Claimant has Type II Diabetes which may have prolonged her recovery. (Tr. at 266.)

Claimant was hospitalized from June 23 through 25, 2009, with intractable back and leg pain. Frederick H. Armbrust, M.D. performed right L4-5 and L5-S1 hemilaminectomies for excision of herniated disc. (Tr. 284, 355.)

On July 13, 2009, Lester Sargent, M.A. conducted a consultative mental examination of Claimant at the request of the State disability determination service. Claimant cited depression and chronic pain as the primary reasons she is unable to work. (Tr. at 277.) Mr. Sargent diagnosed major depressive disorder, recurrent, moderate, without psychotic features, panic disorder without agoraphobia and pain disorder associated with both psychological factors and a general medical condition on Axis I. He made no Axis II diagnosis. (Tr. 280.)

On July 24, 2009, a State agency medical source completed a Physical Residual Functional Capacity Assessment and opined that Claimant was limited to sedentary work (with an ability to stand/walk two to four hours out of an eight-hour day), with occasional postural limitations (except an inability to climb ladders, ropes and scaffolds),

a need to avoid concentrated exposure to extreme cold and fumes, odors, dusts, gases and poor ventilation and a need to avoid even moderate exposure to vibration. (Tr. at 294-301.)

On July 30, 2009, a State agency medical source completed a Psychiatric Review Technique form and opined that Claimant had mild restriction of activities of daily living, moderate difficulty in maintaining social functioning and maintaining concentration, persistence and pace and no episodes of decompensation, each of extended duration. (Tr. at 302-15.)

The same State agency source also completed a Mental Residual Functional Capacity Assessment and rated Claimant's abilities as moderately limited in the following areas: to understand, remember and carry out detailed instructions, to interact appropriately with the general public; to accept instruction and respond appropriately to criticism from supervisors; and to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness. (Tr. at 316-17.) The source noted that Claimant "retain[s] the ability to learn and perform simple, unskilled work-like activities in an environment that involves limited contact with others." (Tr. at 318.)

On July 30, 2009, and August 27, 2009, Claimant saw Dr. Gamponia. She had been diagnosed with bipolar disorder. The notes are difficult to read. (Tr. at 351-52, 353-54.)

On September 8, 2009, Claimant underwent nerve conduction studies. She was status post laminectomies, but had persistent parasthesia of the right outer foot. The study showed acute right S1 radiculopathy. (Tr. at 349.)

7

On September 21, 2009, Ted Thornton, M.D. conducted a comprehensive psychiatric evaluation and diagnosed bipolar affective disorder, generalized affective disorder and features of obsessive compulsive disorder on Axis I and made no Axis II diagnosis. He rated Claimant's GAF at 50. (Tr. at 420.)

On October 19, 2009, Dr. Thornton examined Claimant and noted she was doing better. (Tr. at 416.)

The record includes additional treatment notes from Dr. Gamponia dated November 16, 2009, for chronic back pain. Claimant also reported she was diagnosed with bipolar disorder. (Tr. at 347.)

On November 25, 2009, Dr. Thornton saw Claimant. She reported being down all day, too calm and poorly motivated. (Tr. at 414.)

On January 19, 2010, Dr. Gamponia examined Claimant for follow up of diabetes, depression and back pain. Claimant reported numbness in her toes. (Tr. 391.) Her pain had improved since her last visit, with increased pain when she overdoes it physically. (Tr. at 391-92.) Dr. Gamponia diagnosed diabetes, bipolar disorder and chronic low back pain. (Tr. at 392.)

On April 26, 2010, Claimant saw Dr. Gamponia for a routine examination. She complained of increased pain after carrying her grandson and a clothes basket. (Tr. at 397.) Claimant had a "bad suicidal episode." (Tr. 398.) Dr. Gamponia noted diagnoses including diabetes, bipolar disease, chronic low back pain status post hemilaminectomies right L4-5 and L5-S1. (Tr. at 398.)

On April 29, 2010, Claimant complained of rectal pressure, constipation and vaginal fullness. David Lawrence Williams, M.D. diagnosed rectocele, second degree,

8

symptomatic, weakness of the perineal body and second degree cystocele with urinary incontinence which is being evaluated by her urologist. (Tr. at 380.)

On May 28, 2010, Frederick C. Martinez, M.D. evaluated Claimant related to her complaints of stress urinary incontinence. He diagnosed cystocele, rectocele, and stress urinary incontinence. She was to be scheduled for cystocele repair, rectocele repair and Lynx bladder neck sling. (Tr. at 374.)

X-rays of the L-Spine on June 17, 2010, showed minimal degenerative changes. (Tr. at 372.)

On June 18, 2010, Claimant was seen at West Virginia Health Right, Inc. and complained of right leg pain status post surgery in 2009. She had recently lifted a child. The impression was post laminectomy syndrome. (Tr. at 389.)

On June 22, 2010, Claimant saw Dr. Gamponia after her husband beat her. Claimant had contusions and neck soft tissue injuries. (Tr. at 334.)

On June 25, 2010, Dr. Gamponia wrote a "to whom it may concern letter" noting Claimant's diagnoses of bipolar affective disorder, Type II diabetes, allergic rhinitis, chronic low back pain with a right S1 radiculopathy associated with disc herniations of L4-5 and L5-S1, and pelvic floor prolapse associated with urinary incontinence and fecal stasis. Dr. Gamponia noted Claimant's back surgery, but reported that Claimant continued to have low back pain and right leg paresthesias. Claimant expected to have surgery to address her repair her pelvic floor prolapse. Dr. Gamponia opined that Claimant "remains disabled due to her chronic back pain and must be off work during her surgery for her pelvic floor repair." (Tr. at 331.)

X-rays of the C-spine on June 28, 2010, were unremarkable, but did show

probable bilateral carotid atherosclerosis. (Tr. at 332.) Claimant was scheduled for carotid duplex studies. (Tr. at 333.)

On July 2, 2010, Claimant was hospitalized with an impression of recurrent disc extrusion with surrounding epidural fibrosis impinging upon the right S1 nerve root in the lateral recess and minimal epidural fibrosis within the right lateral recess at L4-5 surrounding the L5 nerve root. (Tr. at 368.) Claimant underwent an MRI of the lumbar spine which showed recurrent disc extrusion with surrounding epidural fibrosis impinging upon the right S1 nerve root in the lateral recess. There was minimal epidural fibrosis within the right lateral recess at L4-5 surrounding the L5 nerve root. (Tr. at 411.)

On July 16, 2010, Dr. Gamponia saw Claimant for an annual examination. Claimant's neck was still sore following the assault by her husband. She had no numbness or tingling in her hands. (Tr. at 400.) Dr. Gamponia diagnosed neck injury, chronic low back pain, possible carotid atherosclerosis, and check urine. (Tr. at 401.)

On August 2, 2010, Claimant underwent carotid duplex studies which showed mild stenosis at the right internal carotid artery and very mild stenosis at the left internal carotid artery. (Tr. 365-66.)

On August 12, 2010, Dr. Armbrust examined Claimant. He noted that he saw Claimant a few weeks earlier and had ordered an MRI scan after Claimant had symptoms involving her left lower extremity. He noted that Claimant had reasonable post-operative results relative to marked improvement in her pain, but not complete resolution. Claimant continued to have chronic symptoms in her right lower extremity. More recently, Claimant was assaulted by her husband and, as a result, had developed

neck, low back pain, left leg discomfort and some numbness in the second and third toes. Range of motion in the neck was mildly limited in all directions. Claimant had no neurologic deficit in the upper extremities. In the lower extremities, straight leg raising and simultaneous hip and knee flexion produced some tightness in the right buttock and posterolateral calf. Straight leg raising on the left was negative. Claimant had good strength in both lower extremities, but she had absence of ankle jerk in the right side as well as diminished sensation over the lateral aspect of the left foot. (Tr. at 359.) Dr. Armbrust noted that while the MRI indicated that Claimant may have a small recurrent disc herniation at L5-S1, it was not really causing any major nerve root or thecal sac compression. His impression was post-laminectomy syndrome. He did not feel that Claimant needed surgery and recommended conservative treatment such as physical therapy. (Tr. at 360.)

On October 27, 2010, Dr. Gamponia examined Claimant. Claimant had a new order for physical therapy because of her neck pain, but was denied authorization. She had some physical therapy before the denial and made some progress but stopped due to the denial. Claimant had no numbness or tingling in her fingers. Claimant was scheduled for bowel and bladder surgery on December 2, 2010. Claimant's glucose levels were under good control. (Tr. 403.)

Claimant's Challenge to the Commissioner's Decision

Claimant asserts that the Commissioner's decision is not supported by substantial evidence because (1) the ALJ erred in failing to find Claimant's lower extremity numbness and anxiety to be severe impairments; (2) the ALJ failed to accord adequate weight to the opinion of Claimant's treating physician, Dr. Gamponia, or obtain

11

additional information from her because her opinion was inadequate; and (3) the ALJ failed to even mention, much less provide reasons for rejecting the lay evidence of record, including an Adult Function report Claimant completed that contained written testimony related to her impairments (Tr. at 194-95). (Pl.'s Br. at 3-6.)

The Commissioner argues that (1) the ALJ fully accommodated Claimant's impairments in his residual functional capacity assessment, including Claimant's nonsevere lower extremity numbness and anxiety; (2) the ALJ reasonably gave little weight to Dr. Gamponia's opinion and recontacting her was not necessary; and (3) the ALJ considered the entire record. (Def.'s Br. at 11-15.)

The court proposes that the presiding District Judge find that the ALJ's decision is not supported by substantial evidence. In his residual functional capacity finding, the ALJ limited Claimant to sedentary work, with an ability to stand/walk two to four hours out of an eight-hour day and sit for six hours out of an eight-hour day; an ability to occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl; an inability to climb ladders, ropes and scaffolds; a need to avoid concentrated exposure to cold, fumes, odors, dusts, gases and poor ventilation and even moderate exposure to vibration and hazards. Claimant retained the ability to learn and perform simple, unskilled work like activities in an environment that involves limited contact with others. (Tr. at 23.)

In making this finding, the ALJ explained that he afforded great weight to the opinions of the State agency medical sources who opined regarding Claimant's physical and mental limitations, but little weight to the opinion of Dr. Gamponia, Claimant's treating physician. (Tr. at 27-28.) The State agency medical sources rendered their opinions on July 24, 2009, and July 30, 2009. (Tr. 294-301, 302-15.) Both opinions

were affirmed by other State agency medical sources on September 23, and 26, 2009. (Tr. 323-24.)

Although the ALJ stated that the opinions of these State agency sources are consistent with the overall medical record, there were significant developments in Claimant's case after the State agency medical sources completed their reviews. Claimant's bladder and rectal problems were diagnosed in April and May of 2010, she had an MRI on July 2, 2010, that showed recurrent disc extrusion with surrounding epidural fibrosis impinging upon the right S1 nerve root in the lateral recess. There was minimal epidural fibrosis within the right lateral recess at L4-5 surrounding the L5 nerve root. (Tr. at 411.) On August 12, 2010, Dr. Armbrust noted that the MRI indicated that Claimant may have a small recurrent disc herniation at L5-S1, but that it was not really causing any major nerve root or thecal sac compression. His impression was post-laminectomy syndrome, and he recommended conservative treatment. (Tr. at 360.) The medical records from Dr. Thornton diagnosing bipolar disorder, generalized anxiety disorder and features of OCD in September of 2009, were added to the record. (Tr. at 420.) Finally, the opinion of Dr. Gamponia on June 25, 2010, that Claimant could not work because of her chronic back pain also was not before these reviewers. (Tr. at 331.)

Because of the timing of when State agency sources review the record, it is commonplace for evidence to be added after medical sources review the record. Certainly, it is within the ALJ's purview to review that evidence and determine that it is consistent with the opinions of the State agency sources such that their opinions can and should be adopted. The problem in this case is that the evidence added after the fact

revealed additional significant physical and mental impairments in a case where Claimant is already limited to sedentary work, further limited by nonexertional limitations.

In addition, the ALJ rejected the opinion of the treating physician, Dr. Gamponia without following the regulations and caselaw related to the evaluation of treating sources. In evaluating the opinions of treating sources, the Commissioner generally must give more weight to the opinion of a treating physician because the physician is often most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. See 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2) (2011). Nevertheless, a treating physician's opinion is afforded "controlling weight only if two conditions are met: (1) that it is supported by clinical and laboratory diagnostic techniques and (2) that it is not inconsistent with other substantial evidence." Ward v. Chater, 924 F. Supp. 53, 55 (W.D. Va. 1996); see also, 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2) (2011). The opinion of a treating physician must be weighed against the record as a whole when determining eligibility for benefits. 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2) (2011). Ultimately, it is the responsibility of the Commissioner, not the court to review the case, make findings of fact, and resolve conflicts of evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). As noted above, however, the court must not abdicate its duty to scrutinize the record as a whole to determine whether the Commissioner's conclusions are rational. Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1994).

If the ALJ determines that a treating physician's opinion should not be afforded controlling weight, the ALJ must then analyze and weigh all the evidence of record, taking into account the factors listed in 20 C.F.R. §§ 404.1527 and 416.927(d)(2)-(6).

These factors include: (1) Length of the treatment relationship and frequency of evaluation, (2) Nature and extent of the treatment relationship, (3) Supportability, (4) Consistency, (5) Specialization, and (6) various other factors.  Additionally, the regulations state that the Commissioner "will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion."  Id. §§ 404.1527(d)(2), 416.927(d)(2).  Notably, under §§ 404.1527(d)(1) and 416.927(d)(1), more weight is given to an examiner than to a non-examiner.

The ALJ stated that he gave "little weight to Dr. Gamponia in June of 2010 [when she] opined that the claimant was disabled due to her chronic pain and must be off work during her surgery for her pelvic floor repair.  Such an opinion is not a complete residual functional capacity and is extremely vague (Exhibit 22F).  Based on the above the undersigned gives this opinion little weight."  (Tr. at 27.)

Instead of applying the regulations outlined above, the ALJ adopted the opinions of nonexamining sources whose opinions were not based on all the evidence of record. This is problematic, and grounds for remand in this case where Claimant has significant limitations and is already limited to sedentary work with additional nonexertional limitations.

The court finds it unnecessary to address the remaining arguments raised by counsel.  They can be addressed on remand.  In particular, the issue as to whether the evidence from the treating physician is sufficient is an issue appropriately addressed on remand.

For the reasons set forth above, it is hereby respectfully **RECOMMENDED** that the presiding District Judge **REVERSE** the final decision of the Commissioner and

REMAND this case for further proceedings pursuant to the fourth sentence of 42 U.S.C. § 405(g) and **DISMISS** this matter from the court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby FILED, and a copy will be submitted to the Honorable John T. Copenhaver, Jr. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.  Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984).  Copies of such objections shall be served on opposing parties and Judge Copenhaver.

The Clerk is directed to file this Proposed Findings and Recommendation and to transmit the same to counsel of record.

May 15, 2012
    Date

Mary E. Stanley
United States Magistrate Judge

16